UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| SERAFIN DORANTES SALDIVAR,<br><br>Petitioner,<br><br>v.<br><br>WARDEN OF ADELANTO ICE PROCESSING CENTER, et al,<br><br>Respondents. | Case No. 5:26-cv-06400-DTB<br><br>**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS** |

**I.**

**PROCEEDINGS**

On October 28, 2026, petitioner Serafin Dorantes Saldivar ("Petitioner"), represented by counsel, filed a Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 ("Petition") (Docket No. 1), accompanied by three supporting declarations (Docket Nos. 1-2, 1-3 and 1-4), and 10 exhibits (Docket Nos. 1-5 through 1-14). The Petition alleges the following claims for relief: (1) Petitioner's warrantless arrest without probable cause of flight risk was in violation of 8 U.S.C. §§ 1226(a) and 1357(a)(2); (2) Petitioner's detention is in violation of the Fourth Amendment; (3) Petitioner's detention violates his rights to procedural due process

in violation of the Fifth Amendment; and (4) Petitioner's detention violates the Administrative Procedure Act. (Id. at 26-29).[1]

Also on October 28, 2026, Petitioner filed a Motion for Temporary Restraining Order ("TRO Application"). (Docket No. 3).

On October 30, 2026, in response to the Court's October 30, 2026 Order (Docket No. 9), Respondents filed their Opposition to the TRO Application. (Docket No. 11).

On November 4, 2026, in response to the Court's November 2, 2026 Order (Docket No. 12), Petitioner filed his Reply. (Docket No. 13).

Thus, this matter is now ready for decision. For the reasons set forth below, the Court grants the Petition.

## II.

## BACKGROUND[2]

Petitioner is a 35-year-old citizen of Mexico. (Petition at ¶ 24). He last entered the United States almost 15 years ago, in or around March 2011. (Id.). Petitioner was not encountered or apprehended by immigration officials at or near the border. (Id.). He has a pending application for immigration relief with the Adelanto Immigration Court. (Id.).

On September 29, 2026, at approximately 7:40 a.m., Petitioner was arrested without a warrant by several Immigration and Customs Enforcement ("ICE") officers as he was driving home from his son's school in Victorville, California. (Id. at ¶ 25). He was in the process of finding a parking spot near his apartment when an unidentified vehicle suddenly drove up and hit the right bumper of his truck before turning its sirens on. (Id.). Another vehicle then drove up behind him,

---

[1] Citation to the pleadings shall refer to the Court's CM/ECF pagination at the top of each page.

[2] The Background is taken from the Petition.

trapping Petitioner between the two vehicles. (Id.). The driver, who was wearing a face mask, sunglasses, and a bullet proof vest, parked in front of Petitioner, quickly exited his vehicle, grabbed the handle of Petitioner's car door, swung the door open, and pointed a gun directly in his face. (Id.). The officer then grabbed Petitioner's right arm, pulled him out of the car, and grabbed Petitioner's cell phone out of his hand without asking permission. (Id.).

Petitioner told the officer that he had just had surgery, and the officer responded by punching him in the stomach. (Id. at ¶ 26). Three additional ICE vehicles drove up to the scene as officers handcuffed Petitioner and searched his person. (Id.). During the search, officers found Petitioner's wallet and consular ID in his pocket and took them without asking for permission. (Id.).

Respondents did not present a properly executed warrant for Petitioner's arrest before the detention and arrest of Petitioner. (Id. at ¶ 27). Respondents also failed to conduct an individualized analysis of the probability of Petitioner's risk of flight before his unlawful arrest without a warrant. (Id.). Importantly, Petitioner never attempted to flee from the officers during the arrest and followed all of their commands, despite the fact that the arresting officer punched him in the stomach after he informed him that he had just had surgery. (Id.).

After Petitioner's initial arrest, he was placed in a vehicle and driven straight to Adelanto ICE Processing Center. (Id. at ¶ 28). The officer driving the vehicle did not say a single word to Petitioner during the trip. (Id.). Once at Adelanto, Petitioner was processed and his fingerprints were taken, and an officer asked him questions related to his status for the first time. (Id.). However, the officer did not inform him that his statements could be used against him, or that he had the right to remain silent and a right to an attorney. (Id.).

/ / /

/ / /

Petitioner had pre-existing medical conditions before he was detained at Adelanto. (Id. at ¶ 29). Petitioner's oldest son has autism and chronic kidney disease, and his kidney issues recently became so severe that he needed a kidney transplant. (Id.). On September 4, 2026, Petitioner underwent major surgery to remove his kidney so that he could give it to his son. (Id.). As a result of the surgery, Petitioner now has an extremely weakened immune system and requires three types of medication – one for pain, one to prevent infection, and one to aid in internal healing – to ensure his body can continue functioning without his kidney. (Id.). Additionally, his wounds require daily and careful cleaning to ensure that his incision points from the surgery do not open up or become infected. (Id.).

These pre-exiting medical and mental health conditions combined with the extremely harsh conditions at the ICE detention facility took a significant toll on Petitioner's physical health. (Id. at ¶ 30). Notably, the medical staff at Adelanto have failed to clean Petitioner's wounds from the surgery properly or at the right frequency, contrary to his doctor's orders. (Id.). He is supposed to get his incision wounds cleaned daily and in a specific way that does not upset the stitches, but the staff have refused to do so. (Id.). Adelanto's lack of adequate medical care has been confirmed by others. (Id.). As a direct result of this failure, Petitioner is experiencing pain and sensitivity in his abdomen area and he has reported that stitches are coming out of one of the incision points. (Id.).

The ongoing litigation in Vasquez Perdomo v. Mullin, No. 2:25-cv-05605-MEMF-SP, 2026 WL 2751388, at *31 (C.D. Cal. Sept. 2, 2026) challenges the same conduct by the Respondents throughout the Central District of California. (Id. at ¶ 31). The Vasquez Perdomo case arose from federal immigration enforcement's sweeping suspicionless stops and warrantless arrests throughout Southern California starting in the summer of 2025. (Id.). A court in this District recently issued a preliminary injunction in Vasquez Perdomo, confirming that a "prearrest

individualized determination by the arresting agent or officer of probable cause that the person being arrested is likely to escape before a warrant can be obtained" is a requirement to effectuate a warrantless immigration arrest. (Id.). The court explained that 8 U.S.C. § 1357(a)(2) and its implementing regulation "clearly require two determinations: (1) unlawful presence and (2) likelihood of escape." Vasquez Perdomo 2026 WL 2751388, at *20. (Petition at ¶ 31).

The preliminary injunction confirms that "escape risk analyses are a prerequisite to warrantless arrest." Id. at *22. (Petition at ¶ 32). A later-issued warrant cannot replace the "prearrest individualized determination" that Vasquez Perdomo identifies as required by the relevant statutes and regulations. Vasquez Perdomo, 2026WL 2751388, at *31. (Id.). The preliminary injunction is binding throughout the Central District of California: "Defendants are enjoined from enforcing their policy and practice of making warrantless civil immigration arrests *in this District* without a prearrest individualized determination by the arresting agent or officer of probable cause that the person being arrested is likely to escape before a warrant can be obtained, as required by8 U.S.C. 1357(a)(2) and 8 C.F.R. § 287.8(c)(2)." Id. (emphasis in original). (Petition at ¶ 33).

## III.

## LEGAL AUTHORITY

A writ of habeas corpus is "available to every individual detained within the United States." Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." Preiser v. Rodriguez, 411 U.S. 475, 484 (1973). A court may grant a writ of habeas corpus to a petitioner who demonstrates to be in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Traditionally, "the writ of habeas corpus has served as a means of reviewing the

legality of Executive detention, and it is in that context that its protections have been strongest." I.N.S. v. St. Cyr, 533 U.S. 289, 301 (2001). A noncitizen in the custody of immigration authorities may bring a writ of habeas corpus pursuant to 28 U.S.C. § 2241 on the grounds of their detention violates the Constitution or other federal laws. 28 U.S.C. § 2241(c)(3); Zadvydas v. Davis, 533 U.S. 678, 687-88 (2001) (federal courts retain jurisdiction to consider habeas relief under Section 2241 for noncitizens subject to detention following an order of removal).

Here, Petitioner has raised claims under the Due Process Clause of the Fifth Amendment, which prohibits deprivations of life, liberty, and property without due process of law. See U.S. Const., amend. V. These protections extend to noncitizens present in the United States. See, e.g., Trump v. J.G.G., 604 U.S. 670, 673 (2025) (*per curiam*) ("It is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings.") (internal quotation marks omitted); Zadvydas, 533 U.S. at 693 ("[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."); Hussain v. Rosen, 985 F.3d 634, 642 (9th Cir. 2021) ("The Fifth Amendment entitles aliens to due process of law in deportation proceedings.") (internal quotation marks and brackets omitted)). Indeed, "the government's discretion to incarcerate noncitizens is always constrained by the requirements of due process . . . ." Hernandez v. Sessions, 872 F.3d 976, 981 (9th Cir. 2017).

Due process "is a flexible concept that varies with the particular situation." Zinermon v. Burch, 494 U.S. 113, 127 (1990). Indeed, the Due Process Clause provides both procedural and substantive protections. See, e.g., Regino v. Staley, 133 F.4th 951, 959 (9th Cir. 2025) ("This clause protects individuals against two types of government action: violations of substantive due process and procedural due process.") (internal quotation marks omitted). To determine whether detention

violates procedural due process, courts frequently apply the three-part test set forth in Mathews v. Eldridge, 424 U.S. 319 (1976). See Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206 (9th Cir. 2022) (applying Mathews to due process challenge to immigration detention, and noting that "Mathews remains a flexible test that can and must account for the heightened governmental interest in the immigration detention context"); López v. Wofford, Case No. 1:25-cv-01226-KES-SKO (HC), 2025 WL 2959319, at *6 (E.D. Cal. Oct. 17, 2025) (collecting cases extending Mathews "to the context of immigration detention"). Under Matthews, courts weigh the following three factors: (1) "[T]he private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Mathews, 424 U.S. at 335; see also id. at 332 ("Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment.").

## IV.

## DISCUSSION

### A. Petitioner's Due Process Claim Warrants Habeas Relief.

In his Petition, Petitioner alleges that the government's denial of the procedural protections afforded by 8 U.S.C. § 1226(a) ("Section 1226(a)") violated Petitioner's right to due process under the Fifth Amendment. (Docket No. 11 at 10, 12, 13, 16, 26, 27).

Initially, the Court notes that Respondents have failed to respond in substance to Petitioner's allegations in the Petition that he was denied Section 1226(a)'s procedural protections by virtue of his warrantless arrest and the failure of

immigration officials to provide him with an initial custody determination. Accordingly, the Court construes Respondents' failure to contest Petitioner's due process claim as a concession to its validity pursuant to Central District of California Local Civil Rule 7-12; see also Martinez v. Sessions, 873 F.3d 655, 660 (9th Cir. 2017) ("The government does not offer any argument on the merits of this petition; therefore, it has waived any challenge to the arguments [the opposing party] raised."); Singh v. Chiang, Case No. 5:25-cv-3024-FMO-SP, 2025 WL 4058328, at *4 (C.D. Cal. Dec. 15, 2025) (construing the government's failure to oppose argument raised by habeas petitioner as a concession); Soleimani v. Larose, Case No. 25-cv-3082-DMS-DEB, 2025 WL 3268412, at *3 (S.D. Cal. Nov. 24, 2025) (granting habeas petition where the government's answer to the petition did not respond to all claims in the petition).

Petitioner alleges that he was arrested without a warrant. (Petition at ¶ 4). Respondents neither dispute this allegation nor allege any exception to the warrant requirement. (See Docket No. 11, generally). Further, there is no evidence in the record that Petitioner was provided with an initial custody determination by an immigration officer following his arrest and detention. Petitioner has remained in custody since his arrest on September 29, 2026, and there is nothing in the record before the Court to indicate that Petitioner had received a custody redetermination hearing before an immigration judge as of the date the Petition was filed on October 28, 2026. On these facts, Petitioner contends that his arrest and continued detention violate Section 1226(a) and the Due Process Clause of the Fifth Amendment. (Petition at 28-29). The Court agrees.

Section 1226(a) "sets out the general rule" for the arrest, detention, and release of noncitizens present in the country who are believed to be subject to removal. Nielsen v. Preap, 586 U.S. 392, 396 (2019). Under Section 1226(a) and its implementing regulations, a Department of Homeland Security ("DHS") officer may

arrest and take into custody a noncitizen "under the authority of Form I-200, Warrant of Arrest" issued by certain designated supervisory officers. 8 C.F.R. § 236.1(b). The Government "may" detain such individuals "pending a decision on whether the [noncitizen] is to be removed from the United States." 8 U.S.C. § 1226(a). DHS officers conduct an initial custody determination. 8 C.F.R. § 1236.1(c)(8). Unless the person is subject to mandatory detention based on their criminal history, 8 U.S.C. § 1226(c), DHS has "the discretion either to detain the [noncitizen] or to release him on bond or parole." Nielsen, 586 U.S. at 396. The DHS officer may release the noncitizen if the noncitizen "demonstrate[s] to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the [noncitizen] is likely to appear for any future proceeding." 8 C.F.R. § 1236.1(c)(8).

After the initial custody determination, the noncitizen may request that an immigration judge review the DHS officer's determination at a bond hearing in immigration court. See 8 C.F.R. § 1236.1(d)(1) (permitting a noncitizen to request amelioration of the condition of release in front of an immigration judge "after an initial custody determination"), 8 C.F.R. § 1003.19 ("Custody and bond determinations made by the service pursuant to 8 CFR part 1236 may be reviewed by an Immigration Judge pursuant to 8 CFR part 1236."). "If at this hearing the detainee demonstrates by the preponderance of the evidence that he is not 'a threat to national security, a danger to the community at large, likely to abscond, or otherwise a poor bail risk,' the [Immigration Judge] will order his release." Rodriguez Diaz, 53 F.4th at 1197 (quoting Matter of Guerra, 24 I. & N. Dec. 37, 40 (BIA 2006)). The noncitizen can "appeal an adverse decision to the [Board of Immigration Appeals]." Id. (citing 8 C.F.R. § 236.1(d)(3)). Alternatively, "an individual detained pursuant to § 1226(a) may request an additional bond hearing whenever he experiences a material change in circumstances." Id. (citing C.F.R. § 1003.19(e)). "The same procedures apply to this new hearing, and its outcome is

also appealable to the [Board of Immigration Appeals]." Id. The noncitizen may also seek judicial review of the bond determination through a habeas petition challenging the determination as constitutionally deficient, legally erroneous, or an abuse of discretion. See Martinez v. Clark, 124 F.4th 775, 784 (9th Cir. 2024).

Reviewing this statutory and regulatory framework, the Ninth Circuit has observed that "Section 1226(a) and its implementing regulations provide extensive procedural protections that are unavailable under other detention provisions, including several layers of review of the agency's initial custody determination, an initial bond hearing before a neutral decisionmaker, the opportunity to be represented by counsel and to present evidence, the right to appeal, and the right to seek a new hearing when circumstances materially change." Rodriguez Diaz, 53 F.4th at 1202.

However, it appears that Petitioner was not arrested and detained pursuant to Section 1226(a), but was instead subjected to the DHS Policy, issued on July 8, 2025 and entitled "Interim Guidance Regarding Detention Authority for Applicants for Admission," in which DHS announced that it had "'revisit[ed] its legal position on detention and release authorities,' determining that Section 235 of [INA] would serve as the applicable immigration detention authority rather than Section 236 for all 'applicants for admission.'" Bautista, 813 F. Supp. 3d at 1094 (quoting the July 8, 2025 notice). "In other words, the change in policy requires ICE employees to consider anyone arrested in the United States and charged with being inadmissible as an 'applicant for admission' under 8 U.S.C. § 1125(b)(2)(A)." Id. The Board of Immigration Appeals ("BIA") has since issued a decision agreeing with DHS's position that such individuals are properly subject to 8 U.S.C. § 1225(b) ("Section 1225(b)"). See Matter of Yajure-Hurtado, 29 I. & N. Dec. 216 (BIA 2025).

/ / /

/ / /

DHS's new policy significantly impacts the rights of noncitizens like Petitioner and their ability to seek release from immigration confinement. Section 1225 applies to two categories of noncitizens: (1) "Section 1225(b)(1) applies to aliens initially determined to be inadmissible due to fraud, misrepresentation, or lack of valid documentation"; and (2) "Section 1225(b)(2) . . . serves as a catchall provision that applies to all applicants for admission not covered by § 1225(b)(1)." Jennings v. Rodriguez, 583 U.S. 281, 2877 (2018). Under the Government's new policy, noncitizens like Petitioner are categorized as falling within the second category—"applicants for admission" subject to Section 1225(b)(2). Under that provision, a noncitizen "shall be detained for a [removal] proceeding" if an immigration officer "determines that [they are] not clearly and beyond a doubt entitled to be admitted" into the country. 8 U.S.C. § 1225(b)(2)(A).

The Ninth Circuit has now held that individuals like Petitioner are properly subject to Section 1226(a). Rodriguez Vasquez v. Bostock, 183 F.4th 1160 (9th Cir. 2026). Moreover, as noted, the final judgment in Bautista has preclusive effect for members of the Bond Eligible Class like Petitioner. See Granados v. Warden, Case No. 5:26-cv-00670-AH-DFM, 2026 WL 852211, at *3 (C.D. Cal. Mar. 25, 2026) ("[I]t appears that Respondents are precluded from relitigating whether "Bond Eligible Class" members—such as Petitioner—are entitled to the relief provided in the Bautista final judgment."); Cortez Lozano v. Santacruz Jr., et al., Case No. 5:26-cv-00313-SSS-BFM, 2026 WL 325462, at *4 (C.D. Cal. Feb. 4, 2026); see generally, De Corral v. Woosley, Case No. 4:25-cv-145-BJB, 2026 WL 524778, at *3 (W.D. Ky. Feb. 25, 2026) ("Under settled principles of collateral estoppel, the Central District's final declaratory judgment binds the parties 'with respect to the matters declared.'") (quoting Restatement (Second of Judgments) § 33).

/ / /

/ / /

In this case, Petitioner should have received the protections mandated under Section 1226(a), including arrest pursuant to a lawful warrant (absent an applicable exception), a prompt initial custody determination by an immigration official, the opportunity to have any custody determination reviewed by an immigration judge, or the ultimate review of his custody status by the BIA. However, because the government arrested Petitioner under the incorrect authority of Section 1225(b), Petitioner has been deprived of these protections and received none of the process he was due. While Respondents have filed a Form I-200 arrest warrant for Petitioner, dated September 29, 2026 (Docket 11-2), the date of Petitioner's arrest, it appears this was issued after Petitioner was arrested. Petitioner's Form I-213, which Respondents also filed (Docket No. 11-1), describes how Petitioner was arrested by chance when he was encountered by ICE agents while they were conducting a "targeted enforcement operation" in pursuit of a specific third person. (Id. at 2). Thus, Petitioner was arrested without a warrant or any stated exception thereto. When he was taken into custody, there was no initial custody determination by an immigration official that he was a flight risk or a danger, and he was not afforded the opportunity for a custody redetermination by an immigration judge, much less review by the BIA. Notwithstanding Respondents' concession that Petitioner "is properly detained" pursuant to Section 1226(a) (Docket No. 11 at 3), the government has denied Petitioner the protections afforded by the statute it now concedes is applicable.

The government's failure to abide by the requirements of Section 1226(a) are even more consequential under the instant facts, given Petitioner's profound medical needs and his recent surgery. (See Petition at 7). A properly functioning evaluation under section 1226(a) by immigration officials would have undoubtedly found that the potential harm to Petitioner by continued detention warranted his release on bond or conditions.

Accordingly, the Court joins the numerous courts in the Ninth Circuit in finding that the government's noncompliance with Section 1226(a), Bautista and similar rulings warrants release. See e.g., Reyes v. Santacruz, Jr., Case No. 5:26-cv-03394-E, 2026 WL 2069974, at *2 (C.D. Cal. July 13, 2026); Garcia-Maya v. Mattos, Case No. 2:26-cv-01513-RFB-BNW, 2026 WL 1965886, at *7 (D. Nev. July 7, 2026); Rodas-Dieguez v. Noem, Case No. 3:26-cv-00976-RBM-MMP, 2026 WL 549910, at *1 (S.D. Cal. Feb. 26, 2026); Maciel v. Noem, Case No. 1:26-cv-01318-DC-CKD, 2026 WL 496948, at *5 (E.D. Cal. Feb. 23, 2026); see also Moctezuma v. Henkey, Case No. 1:25-cv-00741-BLW, 2026 WL 18809, at *5 (D. Idaho Jan. 2, 2026) (observing that "[i[n recent months, courts across the country have ordered the release of detainees in similar situations" and collecting cases).

As these courts have found, release is an appropriate remedy given the nature of the violations at issue. "Section 1226(a) and its implementing regulations provide extensive procedural protections that are unavailable under" Section 1225(b). Rodriguez Diaz, 53 F.4th at 1202. As discussed, these protections include: (1) The requirement that DHS generally obtain a warrant, issued following supervisory review, to arrest a noncitizen; (2) an initial custody determination by a DHS officer shortly after the noncitizen's arrest; (3) if the noncitizen is not released at the initial custody determination, the right to seek review before an Immigration Judge at a bond hearing; (4) the right to appeal an adverse Immigration Judge bond ruling to the BIA and to seek federal court review in habeas; and (5) the right to seek a new bond hearing before an Immigration Judge based on changed circumstances. Section 1226(a) and its implementing regulations therefore provide "several layers of review" to protect against erroneous deprivations of liberty. Rodriguez Diaz, 53 F.4th at 1202.

/ / /

/ / /

Therefore, it follows that "Petitioner's detention 'was unlawful from its inception because ICE detained him under the wrong statute and without affording him any notice or process whatsoever, much less the procedures due under Section 1226(a).'" Garcia-Maya, 2026 WL 1965886, at *8 (quoting Rodriguez-Acurio v. Almodovar, 811 F. Supp. 3d 274, 319-20 (E.D.N.Y. 2025)). "In the absence of an initial custody determination, which establishes a lawful basis for detention in the first instance, a subsequent bond hearing 'is no substitute for the requirement that ICE engage in a deliberative process prior to, or contemporaneous with, the initial decision to strip' Petitioner of his freedom." Id. (quoting Lopez Benitez v. Francis, 795 F. Supp. 3d 475, 497 (S.D.N.Y. 2025)). Section 1226(a) provides critical protections that safeguard Petitioner's due process protected interest in freedom from arbitrary confinement. See Garcia-Maya, 2026 WL 1965886, at *5 ("[T]his Court finds that Petitioner is entitled to the procedural protections provided by § 1226(a), not merely by statute and regulation, but also by the Due Process Clause."); Bautista, 813 F. Supp. 3d at 1094 (discussing "the due process protections found within § 1226(a)"); see also Bautista, 820 F. Supp. 3d at 1033 (finding that the Government's noncompliance has led to "detention without due process" and "deprive[d] members of the Bond Eligible Class of their liberty, economic stability, and fundamental dignity"). The Supreme Court has long recognized that due process requires that immigration detention bear a "'reasonable relation'" to a non-punitive purpose. Zadvydas, 533 U.S. at 690 (quoting Jackson v. Indiana, 406 U.S. 715, 738 (1972)). There are two permissible non-punitive purposes for detention under the immigration laws: Ensuring a noncitizen's appearance at removal proceedings or removal and preventing danger to the community. Id. at 690-92. Section 1226(a), and its implementing regulations, establish procedures to ensure that the government only detains noncitizens where it advances these purposes. By denying Petitioner these protections, Respondents have created an unacceptably high risk that

Petitioner's detention is not justified on danger or flight risk grounds and that he remains confined solely due to the government's refusal to comply with the judgment in Bautista.

Because Petitioner's detention has been unlawful from its initiation, the Court concludes that the "most appropriate remedy for this violation would be to return Petitioner to the previous status quo by releasing him from detention." Reyes, 2026 WL 2069974, at *2. The Ninth Circuit has recognized that "the purpose of habeas remedies is to put the defendant back in the position he would have been in if the constitutional violation never occurred." Lujan v. Garcia, 734 F.3d 917, 935 (9th Cir. 2013) (cleaned up); see also United States v. Stein, 541 F.3d 130, 146 (2d Cir. 2008) (recognizing that the "[t]he appropriate remedy for a constitutional violation is one that as much as possible restores" a litigant "to the circumstances that would have existed had there been no constitutional error") (cleaned up). This principle has greater force where, as here, the protections at issue are intended to prevent an unlawful detention in the first place. See United States v. Morrison, 499 U.S. 361, 364 (1981) (observing "the general rule that remedies should be tailored to the injury suffered").

Release is particularly warranted given the government's continued refusal to comply with the final judgment in Bautista. "[I]n suits against government officials and departments, we generally assume that they will comply with declaratory judgments." United Aeronautical Corp. v. United States Air Force, 80 F.4th 1017, 1031 (9th Cir. 2023). While the government has appealed the Bautista final judgment, "the government is rebelling against the basic principle underlying our constitutional order that 'an order issued by a court with jurisdiction over the subject matter and person must be obeyed by the parties until it is reversed by orderly and proper proceedings.'" Garcia-Maya, 2026 WL 1965886, at *9 (quoting United States v. United Mine Workers of Am., 330 U.S. 258, 293 (1947)). Under these

circumstances, the Court finds that "law and justice" require Petitioner's release. See Hilton v. Braunskill, 481 U.S. 770, 775 (1987) ("Federal courts are authorized, under 28 U.S.C. § 2243, to dispose of habeas corpus matters 'as law and justice require.'"); Lujan, 734 F.3d at 933.

For the reasons set forth above, the Court grants the Petition and orders Petitioner's immediate release from custody.[3]

## V.

## CONCLUSION

IT THEREFORE IS ORDERED that: (1) Judgment be entered granting the Petition; (2) a writ of habeas corpus be issued requiring Respondents to immediately release Petitioner Serafin Dorantes Saldivar (A# 248-005-657) from custody, and return all property confiscated from him during his arrest and processing into detention; (3) enjoining Respondents and their officers, agents, employees, attorneys and persons acting on their behalf in concert or in participation with them, from re-detaining Petitioner without notice and a pre-detention hearing before a neutral arbiter at which the government bears the burden of proving that Petitioner is a flight risk or danger to the community; and (4) Respondents shall file a status report within two (2) business days to confirm that Petitioner has been released from custody pursuant to this Order.

DATED: November 6, 2026

DAVID T. BRISTOW
UNITED STATES MAGISTRATE JUDGE

[3] The Court's determination that Petitioner is entitled to habeas relief on the due process claim alleged in the Petition renders it unnecessary for the Court to address the other claims alleged in the Petition.